Karl Geercken
Amber Wessels
ALSTON & BIRD LLP
90 Park Avenue
New York, NY  10016
Telephone:  (212) 210-9400
Fax:  (212) 210-9444
E-mail:  karl.geercken@alston.com
         amber.wessels@alston.com

Attorneys for *Amicus Curiae*
T-Mobile USA, Inc.

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| AT&T MOBILITY LLC,<br><br>                              Plaintiff,<br><br>                  v.<br><br>JAVIER HIDALGO, CHRISTOPHER MARLBOROUGH, & HELEN LUCIANO<br><br>                              Defendants. | Case  No. 2:11-cv-03907-SJF-AKT<br><br>**T-MOBILE USA, INC.'S *AMICUS* BRIEF IN SUPPORT OF AT&T MOBILITY LLC'S MOTION FOR PRELIMINARY INJUNCTION** |

T-Mobile USA, Inc. ("T-Mobile") respectfully submits this *Amicus Curiae* Brief in Support of AT&T Mobility LLC's Motion for Preliminary Injunction.

## I.     INTRODUCTION

Through their arbitration with AT&T, Defendants seek to block the multi-billion dollar merger between AT&T and T-Mobile.  Defendants ask the arbitrator to award this relief in the context of an arbitration between AT&T and three of its customers – with a limited factual record, truncated procedures, limited appellate review, and no involvement by T-Mobile or any of the hundreds of other interested parties.

Defendants' arbitration is a clear attempt to circumvent the regulatory and judicial proceedings already underway addressing whether the T-Mobile/AT&T merger should be allowed to proceed. The Antitrust Division of the Department of Justice ("Department of Justice") and the Federal Communications Commission ("FCC") have been reviewing this proposed merger for many months now. Just last week, after weeks of review, the Department of Justice filed a lawsuit asking a court to rule on the propriety of the merger under the federal antitrust laws. The FCC is also reviewing the merger under the Federal Communications Act. Although T-Mobile and AT&T have the most direct interest in whether their merger should proceed, hundreds of other parties have also expressed interests. Indeed, in the FCC proceedings alone, more than 530 parties have taken a position on this issue, with more than 400 parties supporting the merger, and more than 130 parties opposing the merger. It is a travesty that Defendants' lead attorney has filed multiple individual arbitrations against AT&T alone in the faint hope that they will score just one "hit" and thereby preempt the very serious, thorough consideration that this merger will receive in the federal court litigation already filed and the FCC review already underway.

T-Mobile files this Amicus Brief in support of AT&T's Motion for Preliminary Injunction ("AT&T's Motion") because it would be improper for an arbitrator to rule, in a private arbitration where T-Mobile is not a party and where its interests will not be considered, on whether T-Mobile's merger may proceed. Defendants' failure to join T-Mobile in the arbitration as a defendant is no oversight – Defendants have not alleged that they have an arbitration agreement with T-Mobile. Moreover, T-Mobile certainly has not agreed to arbitrate with Defendants the propriety of its merger with AT&T.

AT&T's Motion should be granted, and Defendants' arbitration enjoined because:

- Arbitration is a matter of consent, not coercion. And T-Mobile has never agreed that an arbitrator can resolve this dispute.

- Although styled as individual arbitration, Defendant's arbitration is anything but individual. Defendant seeks relief that would resolve not only the dispute between Defendant and AT&T but also the disputes that exist involving many other parties (including the dispute now pending in federal court among AT&T, T-Mobile, and the Department of Justice) regarding the propriety of this exact merger. Neither T-Mobile – nor AT&T for that matter – has agreed to participate in a class arbitration, and the United States Supreme Court has held that class arbitration cannot be compelled against unwilling participants. Even more fundamentally, the United States Supreme Court has repeatedly made clear that arbitration is not an appropriate forum for resolving class disputes.

- Finally, even if the arbitration were allowed to proceed, and Defendant somehow obtained the relief she seeks, that award would be set aside on a motion to vacate under of 9 U.S.C.A. § 10(a)(4) on the grounds the arbitrator exceeded his authority by binding non-parties. It is a waste of everyone's resources to allow an arbitration to proceed that is so infirm that any award would ultimately be vacated.

For these reasons, and as set forth more fully below, AT&T's Motion should be granted, and Defendants' arbitration should be enjoined.

## II.    ARGUMENT AND ANALYSIS

### A.    T-Mobile Has a Direct and Substantial Interest in the Arbitration Brought by Defendant.

Defendant's request for an order from the arbitrator enjoining T-Mobile's merger with AT&T stands to significantly impact T-Mobile's interests. T-Mobile and its stakeholders have a

3

direct and substantial interest in the consummation of its merger with AT&T. Indeed, T-Mobile's parent stands to gain consideration amounting to $39 billion if the merger closes. Moreover, the merger with AT&T will also allow T-Mobile to obtain significant benefits for its customers that would not be available absent the merger. Among other things:

- The merger will give T-Mobile's customers a path to LTE (long term evolution, an emerging wireless technology) – and its attendant advantages in speed, latency, and other attributes – that they would otherwise lack;

- The merger's synergies will result in significant service quality improvements for T-Mobile's customers. Customers in markets where T-Mobile faces (or will soon face) capacity constraints will receive improved service quality in the form of fewer dropped and blocked calls and faster speeds because the merger will enable the new combined company to relieve capacity constraints;

- Even in markets where customers do not face capacity constraints, AT&T's network will provide T-Mobile customers with improved geographic coverage and superior in-building and in-home service; and

- Customers will have access to a broader range of devices and additional rate plan options, as well as access to the nation's largest network of Wi-Fi hotspots.

*See* Description of Transaction, Public Interest Showing and Related Demonstrations (Redacted, Public Version) at 3, 31, 38, & 44 (attached hereto as Exhibit "A").

Yet, Defendants ask an arbitrator to enjoin T-Mobile's merger with AT&T without any consideration whatsoever of T-Mobile's interests. It is for this reason that T-Mobile submits this Amicus Brief in support of AT&T's Motion.

4

B.  T-Mobile Has Not Agreed to Arbitrate Defendant's Claims.

Although T-Mobile has not been named as a party in the arbitration, there can be no doubt Defendants seek relief against T-Mobile. If successful, the Defendants' arbitration would enjoin AT&T from merging with T-Mobile, and that injunction would have the effect of also prohibiting T-Mobile from merging with AT&T.

But T-Mobile cannot be forced into arbitration against its will. Arbitration is a matter of agreement, and Defendants do not allege that they have an arbitration agreement with T-Mobile. Moreover, T-Mobile has never agreed to arbitrate the propriety of the proposed merger with Defendants. *AT & T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 648 (1986) ("[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."); *Cat Charter, LLC v. Schurtenberger*, 646 F.3d 836, 843 (11th Cir. 2011) ("As the Act makes clear, arbitration is a creature of contract. Parties must agree to arbitrate in the first instance . . . ."); *Bank of Am., N.A. v. UMB Fin. Servs., Inc.*, 618 F.3d 906, 911 (8th Cir. 2010) ("A party who has not agreed to arbitrate a dispute cannot be forced to do so."). Defendants cannot avoid this fundamental problem simply by omitting T-Mobile's name from the arbitration caption and continuing to seek relief that impacts T-Mobile in a direct and substantial way. The fact remains that Defendants' arbitration seeks relief against T-Mobile, and T-Mobile has not agreed to arbitrate the dispute at issue.

C.  T-Mobile Cannot Be Compelled to Participate in What Amounts to a Class Arbitration.

To fully and fairly adjudicate this dispute in any sort of enforceable way, the arbitration would have to include not only T-Mobile but all other interested parties. *See generally NCR Corp. v. Sac-Co., Inc.*, 43 F.3d 1076, 1080 (6th Cir. 1995) (finding the arbitrator exceeded authority when the "arbitrator awarded a class action type relief in a case that was not a class

5

action"); *Kennedy v. Am. Express Travel Related Servs. Co.*, 646 F. Supp. 2d 1342, 1343 (S.D. Fla. 2009) (parties who have not agreed to arbitrate have not agreed to submit themselves to the authority of an arbitrator, thus, they "maintain the full panoply of rights that attach under the law."). A proceeding with such a multiplicity of interested participants – which would bear much more semblance to a class action than an individual, bilateral arbitration – cannot take place in the arbitration at issue.[1]

As an initial matter, AT&T's arbitration agreement with Defendants provides for the application of the American Arbitration Association's Commercial Arbitration Rules and the Supplementary Procedures for Consumer Related Disputes. These rules do not even contemplate, much less provide for, intervention. As a result, there is simply no procedure for bringing T-Mobile and the other interested parties into the private, bilateral arbitration between Defendants and AT&T.

Even more fundamentally, even if there were a procedure available for intervening in Defendants' arbitration, T-Mobile cannot be forced to protect its rights by participating in class arbitration. As the Supreme Court held in *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 130 S.Ct. 1758 (2010), a party to an arbitration agreement cannot be forced to consent to class

---

[1] To be clear, a state may not declare an otherwise arbitrable dispute to be off-limits to arbitration on an individual basis simply by characterizing the claim or relief sought as having "public policy" implications. The FAA cannot be so easily evaded; as the U.S. Supreme Court made clear in *Concepcion*, an arbitration that involves "aggregation" or "class procedures" "is not arbitration as envisioned by the FAA, lacks its benefits, and therefore may not be required by state law." *Concepcion*, 131 S. Ct. at 1752-53. The arbitration demand brought by Defendants suffer from a similar flaw; it involves the type of class-wide proceeding seeking aggregated relief and therefore is not the type of "arbitration envisioned by the FAA." No rational business would agree to be part of such an arbitration, and indeed T-Mobile has not done so here. Private arbitration is simply not appropriate for a dispute like this that is beyond the purview of a consumer arbitration agreement and in any event is being actively addressed by the Antitrust Division, the FCC, and the United States District Court for the District of Columbia.

arbitration unless the arbitration agreement provides for class arbitration. 130 S. Ct. at 1775 ("[A] party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so.") (emphasis in original). This holding applies with even greater force to an entity like T-Mobile, which never agreed to any arbitration at all over these issues, much less an arbitration with class-wide effect.

      The Supreme Court's decision in *Stolt-Nielsen* was premised on the Court's recognition that class arbitration is fundamentally different than individual, bilateral arbitration. *See id.* at 1776. Parties in bilateral arbitration often choose to "forgo the procedural rigor and appellate review of the courts in order to realize the benefits of private dispute resolution: lower costs, greater efficiency and speed, and the ability to choose expert adjudicators to resolve specialized disputes." *Id.* at 1775. But class arbitration brings about "fundamental changes." *Id.* at 1776. Instead of resolving a dispute between the parties to one arbitration agreement, the arbitration resolves "many disputes between hundreds or perhaps even thousands of parties." *Id.* The arbitrator's award thus purports to adjudicate the rights of absent parties as well. And perhaps most importantly, judicial review is much more limited, even though the stakes are much higher. *Id.* For these same reasons, the Supreme Court reiterated earlier this year that arbitration is not well suited to the resolution of class disputes. *See AT&T Mobility LLC v. Concepcion*, 131 S.Ct. 1740, 1750-52 (2011).

      The Supreme Court's decision in *Stolt-Nielsen* had nothing to do with whether an arbitration was labeled as a class action or an individual proceeding. Rather the Supreme Court's decision was based on the issues presented by attempting to resolve "many disputes between hundreds or perhaps even thousands of parties" in arbitration. *See id.* at 1776. There is no question that Defendants' arbitration attempts to resolve many disputes involving hundreds of

7

parties regarding whether T-Mobile's merger with AT&T may proceed. For that reason, *Stolt-Nielsen* is directly on point. And under *Stolt-Nielsen*, neither T-Mobile nor AT&T can be compelled to consent to an arbitrator's jurisdiction to resolve – for all the world – the issue of whether T-Mobile's merger with AT&T may proceed.

        D.    <u>Any Arbitration Award Enjoining T-Mobile's Merger with AT&T Would be Vacated.</u>

Arbitration is a creature of contract law; it is axiomatic that an arbitrator may not determine the rights or duties of a non-party to the arbitration agreement. As Judge Easterbrook explained:

> The Federal Arbitration Act does not promote arbitration at the expense of strangers. Suppose Health Grades and Hewitt Associates had agreed between themselves that [a third party] would pay the arbitrators' fees. That would make arbitration more attractive, but no one would think the agreement enforceable; third parties' rights may be affected only with their consent.

*Gotham Holdings, LP v. Health Grades, Inc.*, 580 F.3d 664 (7th Cir. 2009).

An arbitrator who purports to determine the rights of non-parties to the arbitration exceeds his powers in violation of 9 U.S.C.A. § 10(a)(4). *See, e.g., Min. of Finance & Planning of the Republic of Suriname v. Onyx Dev. Corp.,* 1989 WL 122891 at *5 (S.D.N.Y. Oct. 12, 1989) (vacating arbitration award that purported to bind FIAT – a non-party business partner and "joint venturer" of respondent ONYX – because there was "no evidence that the arbitration clause was intended to be binding on FIAT").

Accordingly, a court must vacate an arbitration award that purports to determine the rights and duties of non-parties to the arbitration. Indeed, it is reversible error for a district court to confirm such an award. *See Comedy Club, Inc. v. Improv West Assocs.*, 553 F.3d 1277 (9th Cir. 2009). In *Comedy Club*, a licensee and licensor arbitrated a dispute over the use of trademarks. The district court confirmed the arbitration award even though it purported to enjoin

8

not only the party licensee, but also his non-party "affiliates" and "relatives." The Ninth Circuit Court of Appeals reversed and vacated the confirmation order on the grounds that the arbitrator exceeded his powers by purporting to bind non-parties and by doing so violated the FAA. *See also Interocean Shipping Co. v. Nat'l Shipping & Trading Corp.*, 523 F.2d 527 (2nd Cir. 1975) (court of appeals reversed and vacated arbitration award to the extent it purported to bind respondent's non-party guarantor); *Orion Shipping & Trading Co., Inc. v. East. States Petroleum Corp. of Panama, S.A.*, 312 F.2d 299 (2nd Cir. 1963) (court of appeals affirmed district court's vacatur of arbitration award that purported to bind a non-party guarantor).

Furthermore, enforcement of an arbitration award that purports to determine the rights or obligations of non-parties would violate fundamental principles of due process. It is well established that a court "does not have the power to issue an order against a person who is not a party." 11A Fed. Prac. & Proc. § 2956, at 335 (2nd ed.). At minimum, due process requires notice and an opportunity to be heard. *Memphis Light Gas & Water Div. v. Craft,* 436 U.S.1, 14 (1978). For the reasons more fully set forth in Section II(B) of this Brief, T-Mobile cannot and should not be required to join an arbitration proceeding to which it never agreed. Any arbitration award would determine T-Mobile's legal interests without providing T-Mobile the opportunity to be heard. As Justice Scalia noted, "it is at the very least odd to think that an arbitrator would be entrusted with ensuring that third parties' due process rights are satisfied." *Concepcion,* 131 S. Ct. at 1752. That burden will fall to the Court after an arbitration award is entered. When it is clear at the outset that any arbitration award enjoining T-Mobile's merger with AT&T must be vacated, there is no justification for allowing Defendant's arbitration to proceed.

9

### III. CONCLUSION

For the foregoing reasons and on the authorities cited, AT&T's Motion should be granted.

Respectfully submitted this 29th day of September, 2011.

/s/     *Karl Geercken*
Karl Geercken
Amber Wessels
ALSTON & BIRD LLP
90 Park Avenue
New York, New York
(212) 210-9400
karl.geercken@alston.com
amber.wessels@alston.com

*Counsel for Amicus Curiae T-Mobile USA, Inc.*