# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AT&T MOBILITY LLC, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| SANDRA SMITH, | : | NO. 11-cv-5157 |
| | : | |
| Defendant. | : | |

<u>ORDER</u>

AND NOW, this 6th day of October, 2011, upon consideration of (1) Defendant's Motion to Compel Arbitration and to Dismiss Complaint (Doc. No. 10), (2) Memorandum of Law in Support of Defendant's Motion to Compel Arbitration and to Dismiss Complaint (Doc. No. 11), (3) Plaintiff AT&T Mobility LLC's Motion for Preliminary Injunction (Doc. No. 16), (4) Memorandum of Points and Authorities in Support of Plaintiff AT&T Mobility LLC's Motion for Preliminary Injunction (Doc. No. 24), (5) Memorandum as an *Amicus Curiae* of Communication Workers of America in Support of Plaintiff AT&T Mobility LLC's Motion for Preliminary Injunction (Doc. No. 22), (6) T-Mobile USA Inc.'s *Amicus Curiae* Brief in Support of Plaintiff AT&T Mobility LLC's Motion for Preliminary Injunction (Doc. No. 23), (7) Plaintiff AT&T Mobility LLC's Memorandum of Law in Opposition to Defendant's Motion to Compel Arbitration (Doc. No. 26), and (8) Defendant's Memorandum of Law in Opposition to AT&T Mobility LLC's Motion for Preliminary Injunction (Doc. No. 28), it is hereby ORDERED as follows:

1

1.    Plaintiff AT&T Mobility LLC's Motion for Preliminary Injunction (Doc. No. 16) is GRANTED.  Defendant Sandra Smith is enjoined from arbitrating the claims set forth in her arbitration demand.

2.     Defendant's Motion to Compel Arbitration and to Dismiss Complaint (Doc. No. 10) is DENIED.

I.    Factual Background and Procedural History

The parties do not seriously disagree about the facts giving rise to this dispute.  Plaintiff AT&T Mobility (ATTM) seeks to merge with T-Mobile USA, Inc. (T-Mobile) in a transaction valued at approximately $39 billion.  (Doc. No. 1 ¶ 1).  The U.S. Department of Justice ("DOJ"), the Federal Communications Commission ("FCC"), and various state regulators are in the midst of scrutinizing the proposed merger.  (Doc. No. 24, at 5).  On August 31, 2011, the DOJ filed suit in the United States District Court for the District of Columbia alleging that the ATTM / T-Mobile merger violates Section 7 of the Clayton Act, 15 U.S.C. § 18.[1]  Congress has joined the fray, requesting briefings on the DOJ's decision to challenge the merger.[2]

Defendant, Sandra Smith, "is among 1,109 AT&T customers who, represented by the same counsel, have each filed separate arbitrations that are each aimed at enjoining and/or remedying" the effects of the ATTM / T-Mobile merger.  (Doc. No. 27, at 1).  Bursor & Fisher P.A. ("Bursor") represents Smith in both this matter and the arbitration, and also represents the 1,000-plus other AT&T customers who have filed arbitration demands in an attempt to stop the

---

[1]See United States v. AT&T Inc., No. 1:11-cv-01560 (D.D.C.).

[2]See Sarah Jerome, *House GOP Wants Answers on DOJ Suit Against AT&T*, National Journal (Sept. 9, 2011), http://www.nationaljournal.com/tech/house-gop-wants-answers-on-doj-suit-against-at-t-20110909.

merger.  Scott A. Bursor, name partner of Bursor & Fisher, describes the "Fight the Merger" campaign as follows:

> There is a real groundswell against this merger. Thousands of AT&T customers filed comments at the FCC opposing it, and we expect a similar number will be interested in pursuing the issue in arbitration. AT&T's contracts prohibit consolidation or class arbitration, so if 100 arbitrations are filed, each must be handled as an individual case. If AT&T wins 99 of those cases, they lose. There is strength in numbers, and we only need to win one to stop the merger.[3]

ATTM portrays Smith's arbitration demand as "part of a scheme to pressure ATTM into settling meritless claims."  (Doc. No. 1 ¶ 1).  On the other hand, Smith, through her counsel, contends that ATTM invited "enterprising lawyers" to bring thousands of duplicative serial arbitrations as an alternative to class actions, which ATTM's arbitration agreement prohibits.  (Doc. No. 28, at 10, 18).  In other words, Smith argues that she (and the 1,000-plus other Bursor-represented AT&T customers who filed duplicative arbitration demands) has complied with ATTM's arbitration agreement to the letter.  (Doc. No. 18, at 18).

ATTM moves to enjoin Smith from pursuing her impending arbitration, arguing that Smith's arbitration demand falls outside the scope of the arbitration agreement.  Conversely, Smith moves to compel arbitration and to dismiss this complaint, arguing that she brought the arbitration individually, not as part of a "class" or "representative" proceeding, and therefore her dispute is arbitrable under the agreement.  These motions and associated arguments represent two sides of the same coin.  Therefore, we address them together and, for the reasons discussed

---

[3]*Multiple AT&T Customers File Arbitration Cases Challenging AT&T's Takeover of T-Mobile: Bursor & Fisher Law Firm Announces New Website, www.FightTheMerger.com, Offering to Represent AT&T Customers Opposing the Merger* (July 22, 2011), http://www.bursor.com/news/20110722FightTheMerger/.

below, grant ATTM's motion for a preliminary injunction and deny Smith's motion to compel arbitration and dismiss the complaint.

II.     Legal Analysis

    A.     The Court Has Authority To Decide Whether Smith's Arbitration May Proceed

    Before reaching the primary question of whether to compel or enjoin Smith's arbitration, we must first determine the scope of our authority.  Specifically, we must answer two threshold questions before compelling or enjoining arbitration: "(1) Did the parties seeking or resisting arbitration enter into a valid arbitration agreement? (2) Does the dispute between those parties fall within the language of the arbitration agreement?"  John Hancock Mut. Life Ins. Co. v. Olick, 151 F.3d 132, 137 (3d Cir. 1998).  Neither party contests the validity of the arbitration agreement, so we turn to the second step of the analysis.

    The Supreme Court recently addressed consumer arbitration agreements in AT&T Mobility LLC v. Concepcion, 131 S. Ct. 1740 (2011), so it makes sense to start there.  According to Concepcion, courts should view arbitration agreements as contracts and enforce them according to their terms.  See Concepcion, 131 S. Ct. at 145-46.  When interpreting a contract, the express terms of the contract control.  See Restatement (Second) of Contracts § 203(b). Therefore, we look to the language of the ATTM / Smith arbitration agreement to see what powers it allocates to the Court.  (See Doc. No. 1, Ex. A, hereinafter "arbitration agreement").

    The relevant clause of the agreement states, "[a]ll issues are for the arbitrator to decide, except that *issues relating to the scope and enforceability of the arbitration provision are for the court to decide.*"  Arbitration agreement § 2.2(4) (emphasis added).  Thus, the arbitration agreement gives the Court, not the arbitrator, the authority to determine whether a particular

dispute is arbitrable, i.e., the "scope...of the arbitration provision."

This interpretation comports with the general principle that "[t]he question whether the parties have submitted a particular dispute to arbitration, i.e., the question of arbitrability, is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise." Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002) (internal quotations and citations omitted). Here, the parties have not "clearly and unmistakably" provided otherwise, so this Court must determine whether the dispute in question is arbitrable.

If we conclude that the dispute is not arbitrable, we have the power enjoin arbitration if appropriate. See John Hancock, 151 F.3d at 136 ("[W]hen a party resists arbitration under an existing arbitration clause...the FAA allows a district court to compel, or enjoin, arbitration as the circumstances may dictate.") (citing 9 U.S.C. §§ 3, 4); see also Gray Holdco, Inc. v. Cassady, No. 10–4325, 2011 WL 3606864, at *6 (3d Cir. Aug. 17, 2011) ("[A] district court's action in exercising its equitable powers to grant a preliminary injunction was not inconsistent with the FAA and that a party does not waive its right to seek a preliminary injunction by entering into an arbitration agreement."). Additionally, the American Arbitration Association ("AAA") apparently recognizes a court's authority to enjoin its proceedings in this case. (Doc. No. 28-3, Ex. 7 ("Accordingly, in the absence of an agreement by the parties or a *court order staying this matter*, the AAA will proceed with the administration of the arbitration.")) (emphasis added).

To determine whether this dispute is arbitrable, the Court must ascertain the "scope...of the arbitration provision." Arbitration agreement § 2.2(4). Several sections of the agreement speak to the arbitrability of disputes:

> AT&T and you agree to arbitrate **all disputes and claims** between us.  This agreement is intended to be broadly interpreted.

Arbitration agreement § 2.2(1) (bold in original).

> **You agree that, by entering into this Agreement, you and AT&T are each waiving the right to a trial by jury or to participate in a class action**.

Arbitration agreement § 2.2(1) (bold in original).

> The arbitrator may award declaratory or injunctive relief only in favor of the individual party seeking relief and only to the extent necessary to provide relief warranted by that party's individual claim.  **YOU AND AT&T AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER ONLY IN YOUR OR ITS INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING**.  Further, unless both you and AT&T agree otherwise, the arbitrator may not consolidate more than one person's claims, and may not otherwise preside over any form of a representative or class proceeding.  If this specific provision is found to be unenforceable, then the entirety of this arbitration provision shall be null and void.

Arbitration agreement § 2.2(6) (bold and capitalization in original).

We find these provisions to be quite clear: claims brought in an "individual capacity" are arbitrable, while claims brought in any "class or representative proceeding" are prohibited.  In other words, as the arbitration agreement explicitly states, the arbitrator may not "preside over any form of representative or class proceeding."  Therefore, to determine the propriety of arbitrating Smith's dispute, we must determine whether she brings her claim in her "individual capacity," or rather as part of "any form of representative or class proceeding."

ATTM additionally argues that we should enjoin Smith's arbitration because Section 2.2(6) of the agreement "specifies that an arbitration claimant may request an injunction 'only in

6

favor of the individual party seeking relief and only to the extent necessary to provide relief warranted by that party's individual claim.'" (Doc. No. 24, at 28-32). That is not entirely accurate. Section 2.2(6) provides that "[t]he *arbitrator may award* declaratory or injunctive relief only in favor of the individual party seeking relief and only to the extent necessary to provide relief warranted by that party's individual claim." (emphasis added). Fairly read, this clause addresses the remedies an arbitrator may award, not whether a particular dispute may be properly arbitrated in the first instance. Stated differently, the aforementioned clause, by its terms, does not constrain the nature of relief an individual party may seek, but rather limits what relief an arbitrator ultimately awards.

Here, Smith's arbitration seeks to enjoin the AT&T / T-Mobile merger or, in the alternative, seeks divestitures and other remedies as may be appropriate to preserve competition in the relevant markets. (Doc. No. 28, at 14). The arbitration agreement does not prohibit Smith from *seeking* such remedies (assuming, of course, she brought the action in her "individual capacity" and not as part of any "class or representative proceeding"), although the agreement may prohibit the arbitrator from *awarding* the requested relief. This is not a "question of arbitrability" properly before the court at this time, so we do not resolve it. We do note that a district court may vacate an arbitrator's award if the arbitrator exceeds his powers in granting the award. See 9 U.S.C. § 10(a)(4); Swift Indus., Inc. v. Botany Indus., Inc., 466 F.2d 1125, 1129-34 (3d Cir. 1972) (vacating arbitrator's award as exceeding the arbitrator's authority). Therefore, if Smith's arbitration proceeds, and the arbitrator grants what ATTM believes to be improper relief,

ATTM can challenge the award at that time.[4]

    B.    <u>A Preliminary Injunction Barring Smith's Arbitration Is Warranted</u>

The standard for issuing a preliminary injunction is well established.  The party seeking

the injunction must demonstrate that (1) he is likely to succeed on the merits, (2) he is likely to

suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in his

favor, and (4) an injunction is in the public interest.  <u>Winter v. Natural Res. Def. Council, Inc.</u>,

555 U.S. 7, 20 (2008); <u>PB Brands, LLC v. Patel Shah Indian Grocery</u>, 331 Fed. App'x 975, 978

(3d Cir. 2009) (citing <u>Winter</u>).  ATTM meets all four requirements, so a preliminary injunction

should issue.

    1.    <u>ATTM Is Likely To Succeed On The Merits Because Smith Improperly</u>
    <u>Brought Her Arbitration As Part Of "Any Form Of A Representative Or</u>
    <u>Class Proceeding"</u>

As discussed *supra*, under the arbitration agreement, if Smith brought her claim in her

"individual capacity," then her dispute is arbitrable.  On the other hand, if Smith is part of "any

form of a representative or class proceeding," then the arbitrator cannot preside over it.

---

[4]Defendant contends that ATTM has taken inconsistent positions on the arbitrability of claims seeking broad injunctive remedies in prior cases concerning the same arbitration agreement.  (Doc. No. 28, at 21, 22, 31, 32).  According to Defendant, ATTM previously argued *for* the arbitrability of claims seeking broad injunctive relief, while here, ATTM argues *against* arbitrability of such claims.  The Court shares Defendant's concerns.  At least one district court has accepted ATTM's position that public injunctive relief claims can be arbitrated under ATTM's arbitration agreement.  <u>See Nelson v. AT & T Mobility LLC</u>, No. C10–4802 TEH, 2011 WL 3651153, at *1-5  (N.D. Cal. Aug. 18, 2011) (granting ATTM's motion to compel arbitration of public injunctive relief claims).  That said, the prior cases at least arguably involve different factual and legal circumstances from the matter here, so ATTM's positions do not appear to be directly contradictory.  Further, neither party has briefed the issue of judicial estoppel, so the Court declines to reach it.  <u>See New Hampshire v. Maine</u>, 532 U.S. 742, 749-51 (2001) (explaining that the doctrine of judicial estoppel protects the integrity of the judicial system by preventing a party from taking a position in a legal proceeding, succeeding, and then taking a contrary position in a later proceeding).

Nominally, Smith filed her arbitration demand as an individual.  In seeking to enjoin the ATTM /
T-Mobile merger, she does not explicitly purport to represent anyone but herself.  However, that
fact alone does not end the analysis.

In this circuit and elsewhere, courts consistently prioritize substance and function over
form when characterizing the nature of a dispute or claim.  See Jarbough v. Attorney General of
U.S., 483 F.3d 184, 189 (3d Cir. 2007) ("We are not bound by the label attached by a party to
characterize a claim and will look beyond the label to analyze the substance of a claim. To do
otherwise would elevate form over substance and would put a premium on artful labeling.");
Armstrong v. Capshaw, Goss & Bowers, LLP, 404 F.3d 933, 936 (5th Cir. 2005) ("We have
frequently instructed district courts to determine the true nature of a pleading by its substance,
not its label.").  This is particularly true in the context of "class" or "representative" proceedings.

For example, the Eastern District of Pennsylvania recently remarked that the Class Action
Fairness Act (CAFA) "calls upon federal district court judges to look beyond the face of a
complaint when determining whether federal jurisdiction exists over a matter that *appears to be a
class action in all but name*."  West Virginia ex rel. McGraw v. Comcast Corp., 705 F. Supp. 2d
441, 452-53 (E.D. Pa. 2010) (emphasis added).  Likewise, the Fifth Circuit refused to elevate
form over function, seeing through the formal label of a dispute (*parens patriae*) and recognizing
that the action was, in fact, a mass action under CAFA.  See Louisiana ex rel. Caldwell v.
Allstate Ins. Co., 536 F.3d 418, 423, 430 (5th Cir. 2008).  In the preclusion context, the Ninth
Circuit similarly emphasized the primacy of substance over mere labels, noting "that binding
current members of an association to the results of prior litigation conducted by that association
is considered especially appropriate when the *litigation resembles a class action in substance, if*

9

*not in form*." <u>Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency</u>, 322 F.3d 1064,

1083-84 (9th Cir. 2003) (emphasis added). Judge Jack Weinstein has even coined a term-"quasi-

class action"- to describe a collection of multiple, similar suits brought by different individuals.

<u>See</u> <u>In re Zyprexa Prods. Liability Litig.</u>, 467 F. Supp. 2d 256, 269-70 (E.D.N.Y. 2006).

 The "function over form" principle serves an important purpose: avoiding undesirable

strategic behavior on the part of litigants. <u>See</u> <u>Jarbough</u>, 483 F.3d at 189 (elevating form over

substance "would put a premium on artful labeling."). This reasoning rings true in both litigation

and arbitration contexts. Therefore, in interpreting the arbitration agreement as it applies to

Smith's arbitration demand, we look not only at the formal label of her demand, but also at the

true nature of her claim.

 Here, Smith is but one of over 1,000 people who, represented by the same firm, filed

essentially identical arbitration demands, all seeking the same, non-individualized relief:

injunction of the AT&T / T-Mobile merger. We must determine whether this constitutes any

form of a "representative" or "class" proceeding. For guidance, we turn again to <u>Concepcion</u>.

<u>Concepcion</u> confirms that the Federal Arbitration Act ("FAA") embodies a "liberal federal policy

favoring arbitration." <u>Concepcion</u>, 131 S. Ct. at 1745. However, that policy does not extend to

"class" arbitrations. <u>See id.</u> at 1748 ("Requiring the availability of classwide arbitration

interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with

the FAA."). The <u>Concepcion</u> Court discusses several hallmarks of class arbitration, as

distinguished from individual arbitration, that are particularly troublesome. We find these

hallmarks to be useful guideposts in our effort to properly characterize Smith's claim.

 First, <u>Concepcion</u> laments that "the switch from bilateral to class arbitration sacrifices the

principal advantage of arbitration—its informality—and makes the process slower, more costly, and more likely to generate procedural morass than final judgment." Id. at 1751.  Here, the multiple, functionally identical arbitrations filed by Smith and others would likely result in "procedural morass," not "final judgment."  Consider the following issues that are likely to arise.  Does an arbitrator have the power to enjoin a merger that the FCC, DOJ, and various state agencies are concurrently reviewing?  Would enjoining the merger exceed the scope of the parties' arbitration agreement?  Would one arbitrator be bound by the findings and decision of another?  In the DOJ's parallel challenge of the merger, would the District Court for the District of Columbia be bound by principles of preclusion to accept the arbitrator's decision?  What if different arbitrators reach inconsistent results?  Grappling with these issues would almost certainly generate the "procedural morass" the Concepcion Court seeks to avoid.

Second, the Concepcion Court worries that class arbitrations will not adequately protect absent parties.  See id. at 1751-52 ("[I]t is at the very least odd to think that an arbitrator would be entrusted with ensuring that third parties' due process rights are satisfied.").  In Smith's case, an arbitrator's decision, either for or against the merger, will profoundly affect many absent parties' interests.  T-Mobile has a huge, $39-billion stake in the outcome of the arbitration, but T-Mobile is not a party to the arbitration.  Other absent parties that would lack protection in these arbitrations include cellular technology consumers; public interest groups that both oppose and support the merger; mobile computing technology businesses (again, that both oppose and support the merger); and the numerous government bodies that are also evaluating the merger.

Finally, "arbitration is poorly suited to the higher stakes of class litigation." Concepcion, 131 S. Ct. at 1752.  The reason for this is simple.  Class arbitration is characterized by greatly

11

increased risk to defendants, and "[f]aced with even a small chance of a devastating loss, defendants will be pressured into settling questionable claims.  Other courts have noted the risk of '*in terrorem*' settlements that class actions entail,...and class arbitration would be no different" Id. (citations omitted).  For example, Judge Posner in Rhone-Poulenc Rorer discussed the very real problem of so-called "blackmail" settlements, i.e., settlements induced by a small probability of an immense judgment in a class action, and declined to force defendants to stake the outcome of their companies on a single trial.  See 51 F.3d at 1297-1300 (7th Cir. 1995).  Smith's arbitration epitomizes these risks.  The immense magnitude of the risk, i.e., the fate of a $39 billion merger, may pressure ATTM to settle claims that it believes to be meritless.

Thus, Smith's arbitration bears all the hallmarks of "class arbitration" laid out in Concepcion.  Additionally, the common usage of the word "representative" encompasses Smith's arbitration here.  Webster's Third New International Dictionary defines "representative" as "serving to represent, portray, *or typify* : characterized by representation" and "serving as a characteristic example: *illustrative of a class*: conveying an idea of others of the kind." (emphasis added).  Smith's arbitration certainly "typifies" and is "illustrative of" the class of arbitrations at issue here: the same law firm represents all 1,000-plus people who filed arbitration demands, including Smith; all demands are functionally identical; and all demands, including Smith's, seek the same, indivisible relief, i.e., enjoining or restructuring the proposed ATTM / T-Mobile merger.

Smith argues that "AAA has already determined the demands for arbitration are not class or representative actions, and that they were properly filed."  (Doc. No. 28, at 25) (emphasis in original).  That misstates AAA's position.  AAA made an "administrative determination that

Claimant has met the filing requirements by filing a demand for arbitration providing for administration by the AAA under its Rules." (Doc. No. 28-3, Ex. 7). The fact that AAA determined Smith met its filing requirements says little about whether AAA believes Smith's action is part of a "class" or "representative" proceeding. Even if AAA had definitively concluded that Smith's arbitration was not a class or representative action, the arbitrability of Smith's dispute is for this Court, not AAA, to decide, as discussed in detail *supra*.

Smith also argues that, in <u>Concepcion</u>, "AT&T specifically told the Supreme Court that the arbitration agreement was designed to incentivize customers and an 'enterprising lawyer' to bring '4,700...serial arbitrations.'" (Doc. No. 28, at 16-19). In other words, Smith asserts that she and the other requestors are only doing what ATTM suggested they do under the arbitration agreement. Although seemingly in tension with ATTM's position in this case, ATTM made this "enterprising lawyer" statement in a very different context than the one presented here. <u>Concepcion</u> involved a "putative class action alleging, among other things, that AT & T had engaged in false advertising and fraud by charging sales tax on phones it advertised as free." <u>Concepcion</u>, 131 S. Ct. at 1744. The Concepcions' dispute with ATTM stemmed from a $30.22 sales tax charge. <u>See</u> <u>id.</u> Unlike Smith and the other requestors here, the Concepcions did not seek to enjoin a multi-billion dollar merger on antitrust grounds. The fact that ATTM took one position in one factual circumstance does not preclude ATTM from taking a different position in an entirely different context.

In any event, the Supreme Court certainly did not adopt or ratify ATTM's "enterprising lawyer" argument in deciding <u>Concepcion</u>. <u>See</u> <u>id.</u> at 1753 (noting that "the arbitration agreement provides that AT&T will pay claimants a minimum of $7,500 and twice their

attorney's fees if they obtain an arbitration award greater than AT&T's last settlement offer. The District Court found this scheme sufficient to provide incentive for the individual prosecution of meritorious claims that are not immediately settled," but making no mention of an "enterprising lawyer" filing 4,700 serial arbitrations).[5]   ATTM's position in Concepcion, a case involving facts distinctly different from the facts in this matter, does not decide the issue here.

Finally, we recognize that the Supreme Court disapproved of the "virtual representation" doctrine in Taylor v. Sturgell, 553 U.S. 880 (2008), a case cited by neither party, but one we believe warrants some discussion.  In Taylor, two friends brought successive requests under the Freedom of Information Act (FOIA), each seeking the same information.  Id. at 885.  In holding that the second party's request was not precluded by the first party's, the Supreme Court articulated the limits of non-party preclusion and rejected a broad theory of "virtual representation" in the preclusion context.  See id. at 893-904.

For several reasons, Taylor does not control the issue here, i.e., whether an arbitration demand is properly characterized as "individual" on the one hand, or rather "class" or "representative" on the other.  First, Taylor was decided before Concepcion, which altered the landscape of consumer arbitration agreements.  Second, Taylor dealt with non-party preclusion, while the instant dispute revolves around contract interpretation.  A determination that Smith's arbitration is a form of representative or class proceeding, and therefore outside the scope of the arbitration agreement, does not implicate the same non-party protection concerns that motivated

---

[5]Again, the parties did not brief the "judicial estoppel" question, and the Court declines to reach it here.  However, we note that the "judicial estoppel" analysis involves consideration of "whether the party has succeeded in persuading a court to accept that party's earlier position."  See New Hampshire v. Maine, 532 U.S. at 750.  Here, ATTM seems to have failed to persuade the Supreme Court to accept its "enterprising lawyer filing 4,700 serial arbitrations" argument.

the Taylor Court.  See Taylor, 553 U.S. at 898-901.  Finally, Taylor left open the possibility that

a different, more flexible approach to representative actions may be warranted in "public law"

litigation, i.e., matters in which "the plaintiff has a reduced interest in controlling the litigation

'because of the public nature of the right at issue.'" See id. at 902-03 (noting that "in contrast to

the public-law litigation contemplated in Richards, a successful FOIA action results in a grant of

relief to the individual plaintiff, not a decree benefitting the public at large".).  Smith's arbitration

undoubtedly constitutes a "public law" matter, i.e., the consummation or injunction of a multi-

billion dollar merger, so the law tolerates a more flexible approach.

　　　　For all the reasons discussed *supra*, ATTM is likely to succeed on the merits of its claim

that Smith's arbitration constitutes "any form of a representative or class proceeding," and is

therefore barred by the arbitration agreement.

　　　　　　　　　2.　　　ATTM Will Suffer Irreparable Harm If The Arbitration Is Not Enjoined

　　　　Absent injunctive relief, ATTM will suffer irreparable harm.  To begin, forcing a party to

arbitrate a claim it did not agree to arbitrate constitutes *per se* irreparable harm.  See

PaineWebber Inc. v. Hartmann, 921 F.2d 507, 514-15 (3d Cir. 1990) (finding it "obvious that the

harm to a party would be *per se* irreparable if a court were to abdicate its responsibility to

determine the scope of an arbitrator's jurisdiction"), *overruled on other grounds by* Howsam, 537

U.S. at 85.  Here, ATTM's arbitration agreement explicitly forbids "any form of a representative

or class proceeding."  As detailed *supra*, Smith's arbitration is a form of representative or class

proceeding, and requiring ATTM to arbitrate Smith's claim would work a *per se* irreparable

harm on ATTM.

　　　　Additionally, the combination of the large number of duplicative arbitrations and the

short time frame for each arbitration would irreparably harm ATTM by diverting its resources, attention, and witnesses away from the concurrent government proceedings.  It is undisputed that the DOJ has challenged the proposed ATTM / T-Mobile merger under Section 7 of the Clayton Act, the same basis for the challenges brought by Smith and the other 1,000-plus individuals in their arbitration demands.[6]  The FCC and numerous state regulators are also evaluating the transaction.

Further, Smith's arbitration, as well as the other functionally identical arbitrations brought as part of the "Fight the Merger" campaign, would proceed on an extremely compressed schedule.  Under AAA's arbitration rules currently being applied to the arbitration proceedings, the arbitrations will take place by early November at the latest.  (Doc. No. 24, at 36).  Each hearing must be completed in one day, unless the arbitrator grants an extension.  (Doc. No. 24, at 36).  The rules also require an arbitrator to issue an award within fourteen (14) days of the hearing (Doc. No. 24, at 38).  Compelling ATTM to participate in numerous, imminent, duplicative arbitrations, each on an expedited basis, while embroiled in litigation with the DOJ and attempting to convince the FCC and various state agencies that the proposed merger is not anti-competitive, would cause ATTM irreparable harm.  ATTM would be obligated to allocate time, resources, and witnesses to the arbitration proceedings, which will purport to decide the very same issues that the DOJ, FCC, and state regulators are currently grappling with.  If the ATTM / T-Mobile merger fails, it should fail because reasoned, informed analysis indicates that the merger will harm competition, not because multiple, carbon-copy arbitrations stretch ATTM too thin.

_____

[6]See United States v. AT&T Inc., No. 1:11-cv-01560 (D.D.C.).

16

### 3.    The Balance Of Hardships Tips In Favor Of ATTM

As discussed immediately above, permitting Smith's arbitration to proceed at this time would cause ATTM irreparable harm.  In comparison, an injunction would only slightly prejudice Smith.  To begin, Smith's arbitration demand invokes the same statutory provision (Section 7 of the Clayton Act) and seeks the same ultimate relief (an injunction of the merger) as the DOJ's lawsuit.  The FCC is also assessing the competitive impact of the merger as part of its review.  These government proceedings may very well result in the precise relief Smith demands, which minimizes the hardship an arbitration injunction would impose on Smith.

Second, Smith's private arbitration seeking to enjoin the merger is premature in light of the ongoing governmental proceedings, so delaying Smith's arbitration pending government review of the merger does not unfairly burden Smith.  In this regard, we agree with the Seventh Circuit's decision in South Austin Coalition Community Council v. SBC Communications Inc., 191 F.3d 842 (7th Cir. 1999), which affirmed a district court's dismissal of private antitrust litigation challenging a merger because the suit was premature "until all required state and federal approvals have been obtained-for the agencies might insist on changes that would substantially alter the merger's competitive effects."  Id. at 843.  Judge Easterbrook's reasoning in reaching this result persuades us:

> Courts often wait for agencies, even when the agencies' views are not legally conclusive-not only because the agencies may have something helpful to say, but also because what the agencies do may shape the litigation...Until the agencies have had their say, it is impossible to perform the sort of antitrust analysis that is integral to a potential competition case, and it therefore would be a waste of everyone's time to proceed.  Antitrust litigation can be very costly; an expensive challenge to a moving target is worse than pointless.

South Austin, 191 F.3d at 844-45.  Here, AT&T may have to make significant divestitures to appease government regulators.[7]  In the words of Judge Easterbrook, this merger is a "moving target," and permitting Smith's arbitration to proceed at this relatively early stage of government review would likely do more harm than good.

Finally, we note that preliminarily enjoining Smith's arbitration does not leave Smith without recourse.  The arbitration agreement "does not preclude [Smith] from bringing issues to the attention of federal, state, or local agencies, including, for example, the Federal Communications Commission.  Such agencies can, if the law allows, seek relief against [ATTM] on your behalf."  Arbitration agreement §2.2(1).  As noted previously, the FCC is already investigating the merger, and nothing prevents Smith from bringing her concerns to the FCC's attention.

4.    The Public Interest Weighs Heavily In Favor Of Enjoining Smith's Arbitration

As discussed *supra*, one of the concerns Concepcion expressed with respect to class arbitration is the inability to adequately protect the interests of absent parties.  That concern looms large here.  The public - including ATTM and T-Mobile customers; T-Mobile itself; public interest organizations; and the mobile computing technology industry as a whole - has a vested interest in ensuring that the ATTM / T-Mobile merger review is both transparent and thorough.  Importantly, parties that oppose the merger, such as Ms. Smith, share this interest with parties that champion it.  An open, comprehensive, well-informed merger review benefits the

---

[7]See Spencer E. Ante & Gina Chon, *AT&T Fires Back At DOJ*, Wall Street Journal (Sept. 10, 2011),
http://online.wsj.com/article/SB10001424053111904836104576560940430102076.html.

18

public at large by precluding "bad" mergers and permitting "good" ones.  The FCC, DOJ, and

other government regulators should be free to protect this public interest without worrying that a

single arbitrator in a private proceeding (or, more likely, the conflicting decisions of various

arbitrators in functionally equivalent, duplicative proceedings) will preempt their review.

Finally, the public has a strong interest in avoiding the kind of "anomalous court forum

shopping" that appears to be going on here.  By Scott Bursor's own admission, "AT&T's

contracts prohibit consolidation or class arbitration, so if 100 arbitrations are filed, each must be

handled as an individual case. *If AT&T wins 99 of those cases, they lose. There is strength in*

*numbers, and we only need to win one to stop the merger.*"[8]  The late Richard Nagareda, an

expert in class actions and complex litigation, described this "anomalous court" dilemma in the

class action certification context, but the same principles apply here.  When deciding where to

file a national market class action, class counsel strategically seeks out the one "anomalous

court," i.e., the one court that would certify the class action, even though many other courts

would not.  See Richard A. Nagareda, *Common Answers For Class Certification*, 63 Vand. L.

Rev. En Banc 149, 155-57 (2010).  This poses a problem because "a single positive trumps all

the negatives," meaning that class counsel needs only to find one court to certify his case, even if

hundreds of other courts would disagree.  See id.

Here, counsel flaunts his ability to "stop the merger," even if 99 out of 100 arbitrators

agree that the merger should proceed.  Permitting one "anomalous" arbitrator to decide the fate of

---

[8]*Multiple AT&T Customers File Arbitration Cases Challenging AT&T's Takeover of
T-Mobile: Bursor & Fisher Law Firm Announces New Website, www.FightTheMerger.com,
Offering to Represent AT&T Customers Opposing the Merger* (July 22, 2011),
http://www.bursor.com/news/20110722FightTheMerger/. (emphasis added).

a $39-billion merger would do a grave disservice to the public interest.

III.     Conclusion

  For the aforementioned reasons, ATTM has met the requirements for the issuance of a preliminary injunction.  Plaintiff AT&T Mobility LLC's Motion for Preliminary Injunction (Doc. No. 16) is therefore GRANTED.  Defendant Sandra Smith is enjoined from arbitrating the claims set forth in her arbitration demand.  Accordingly, Defendant Sandra Smith's Motion to Compel Arbitration and to Dismiss Complaint (Doc. No. 10) is DENIED.


         BY THE COURT:

         /s/ Legrome D. Davis

         Legrome D. Davis, J.