Anthony J. Diana
MAYER BROWN LLP
1675 Broadway
New York, NY 10019-5820
adiana@mayerbrown.com
Telephone:  (212) 506-2500
Facsimile:  (212) 262-1910

[other counsel listed on signature page]

*Attorney for Plaintiff*
*AT&T Mobility LLC*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| AT&T MOBILITY LLC,<br><br>       Plaintiff,<br><br>  v.<br><br>JAVIER HIDALGO, CHRISTOPHER MARLBOROUGH, and HELEN LUCIANO,<br><br>       Defendants. | Case No. 2:11-cv-03907-SJF-AKT<br><br>ORAL ARGUMENT REQUESTED |

**PLAINTIFF AT&T MOBILITY LLC'S NOTICE OF RULING**
**REGARDING PENDING MOTIONS FOR PRELIMINARY**
**INJUNCTION AND TO COMPEL ARBITRATION**

As the Court is aware, this action is one of eight lawsuits that AT&T Mobility LLC ("ATTM") has filed to obtain injunctions against a series of identical arbitrations brought by counsel for defendants, each of which seeks to enjoin the proposed merger between ATTM and T-Mobile USA, Inc.  In each action, the parties have filed the same motions:  ATTM has moved for a preliminary injunction of the arbitrations, and the defendants have moved to compel arbitration of ATTM's challenge to the arbitrability of the defendants' Demands for Arbitration.

Earlier today, in the action in the District of Maryland, Chief Judge Deborah Chasanow granted ATTM's motion for a preliminary injunction and denied the defendant's motion to compel arbitration. *See* Mem. Op., *AT&T Mobility LLC v. Fisher*, No. 8:11-cv-02245-DKC (D. Md. Oct. 28, 2011). A copy of Chief Judge Chasanow's memorandum opinion is attached.

Dated: October 28, 2011

By: /s/ Kevin Ranlett

Anthony J. Diana
MAYER BROWN LLP
1675 Broadway
New York, NY 10019-5820
Telephone: (212) 506-2500
Facsimile: (212) 262-1910

*Attorney for Plaintiff*
*AT&T Mobility LLC*

*Of counsel*
Andrew J. Pincus (*pro hac vice*)
Evan M. Tager (*pro hac vice*)
Archis A. Parasharami (*pro hac vice*)
Kevin Ranlett (*pro hac vice*)
MAYER BROWN LLP
1999 K Street, N.W.
Washington, DC 20006
Telephone: (202) 263-3217
Facsimile: (202) 263-5217

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| AT&T MOBILITY LLC | : |
| | : |
| v. | : Civil Action No. DKC 11-2245 |
| | : |
| LARA FISHER | : |
| | : |

**MEMORANDUM OPINION**

**I.  Background**

Lara Fisher, a customer of AT&T Mobility LLC ("ATTM"), filed a demand for arbitration against AT&T, Inc. and ATTM pursuant to section 16 of the Clayton Act, 15 U.S.C. § 26, to enjoin ATTM's proposed acquisition of T-Mobile USA, Inc. from Deutsche Telekom.  Ms. Fisher asserts that the proposed acquisition violates section 7 of the Clayton Act, 15 U.S.C. § 18.[1]  ATTM filed a complaint in this court for declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202, and the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1, *et seq.*, asserting both federal question and diversity jurisdiction.  It seeks a declaration that the demand falls outside the scope of the Arbitration Agreement, and an injunction prohibiting Ms.

---

[1]  Ms. Fisher is among more than a thousand customers, represented by the same law firm, who have filed similar demands for arbitration.  At the hearing, counsel for ATTM stated that a new group of demands has been filed, purporting to seek narrower, and potentially individual, relief under the Clayton Act.

Fisher from pursuing this or any other representative claim for collective relief in arbitration.  Ms. Fisher filed a motion to compel arbitration (ECF No. 22), and ATTM filed a motion for preliminary injunction (ECF No. 27).  Both motions came on for hearing on October 19, 2011.  For the following reasons, ATTM's motion for preliminary injunction will be granted.  Ms. Fisher's motion to compel arbitration will be denied.  The motions for leave to file amicus curiae memoranda will be granted. (ECF Nos. 25, 26, 31, and 34).

**II.  Standards of Review**

**A.  Preliminary Injunction**

"A preliminary injunction is an extraordinary remedy." *Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 345 (4th Cir. 2009), *vacated on other grounds by* 130 S.Ct. 2371 (2010), *and reissued in part*, 607 F.3d 355 (4th Cir. 2010). To obtain a preliminary injunction, a plaintiff must establish four elements:  "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest."  *Id.* at 346 (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).  All four requirements must be satisfied.  *Id.*

2

**B.     Motion to Compel Arbitration**

Under the Federal Arbitration Act, 9 U.S.C. § 4:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

In deciding a motion to compel arbitration, district courts must "engage in a limited review to ensure that the dispute is arbitrable—i.e., that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 938 (4th Cir. 1999) (internal quotations and citation omitted).

> In the Fourth Circuit, a litigant can compel arbitration under the FAA if he can demonstrate "(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute." *Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991).

*Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500-01 (4th Cir. 2002).

3

**III. Analysis**

The parties agree that they entered into an Arbitration Agreement as part of their contractual relationship. They purport to agree that this court has the authority to decide whether the matter sought to be arbitrated falls within the "scope" of that Arbitration Agreement.[2] It turns out, however, that the second agreement is ephemeral because the parties differ on what constitutes a "scope" determination.

The Arbitration Agreement is contained in the Wireless Customer Agreement, in section 2. The first section, "2.1 Dispute Resolution By Binding Arbitration," contains what is termed a summary.[3] Section 2.2 is titled "Arbitration Agreement"

---

[2] The Arbitration Agreement contains the following sentence in subsection 2.2(3):  "All issues are for the arbitrator to decide, except that issues relating to the scope and enforceability of the arbitration provision are for the court to decide."

[3] The first paragraph of that section reads:

> Most customer concerns can be resolved quickly and to the customer's satisfaction by calling our customer service department at 1-800-331-0500.  In the unlikely event that AT&T's customer service department is unable to resolve a complaint you may have to your satisfaction (or if AT&T has not been able to resolve a dispute it has with you after attempting to do so informally), we each agree to resolve those disputes through binding arbitration or small claims court instead of in courts of general jurisdiction.  Arbitration is more informal than a lawsuit in court.  Arbitration uses a

4

and it begins in subsection 2.2(1) with the statement that "AT&T and you agree to arbitrate all disputes and claims between us." It also provides that "You agree that, by entering into this Agreement, you and AT&T are each waiving the right to a trial by jury or to participate in a class action." Subsection 2.2(6) contains the following:

> The arbitrator may award declaratory or injunctive relief only in favor of the individual party seeking relief and only to the extent necessary to provide relief warranted by that party's individual claim. YOU AND AT&T AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER ONLY IN YOUR OR ITS INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING. Further, unless both you and AT&T agree otherwise, the arbitrator may not consolidate more than one person's claims, and may not otherwise preside over any form of a representative or class proceeding. If this specific provision is found to be unenforceable, then the entirety of this arbitration provision shall be null and void.

---

> neutral arbitrator instead of a judge or jury, allows for more limited discovery than in court, and is subject to very limited review by courts. Arbitrators can award the same damages and relief that a court can award. Any arbitration under this Agreement will take place on an individual basis; class arbitrations and class actions are not permitted. For any non-frivolous claim that does not exceed $75,000, AT&T will pay all costs of the arbitration. Moreover, in arbitration you are entitled to recover attorneys' fees from AT&T to at least the same extent as you would be in court.

Ms. Fisher's demand for arbitration asserts a violation of the Clayton Antitrust Act in connection with the proposed acquisition of T-Mobile USA, Inc.  In the 226-page document, Ms. Fisher contends that the merger would harm competition and consumers, would result in public interest harms including job loss, and she seeks, *inter alia*, to enjoin the proposed acquisition, or alternatively divestiture of certain assets.  The demand contends in paragraph 330 that the proposed acquisition "will likely substantially lessen competition in the sale of wireless telecommunications services in the United States, in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18."  She asserts in paragraph 332 that "[t]he injury to Claimant is of the type that the antitrust laws were designed to prevent and flows from that which makes AT&T's actions unlawful.  As a result of AT&T's anticompetitive conduct, Claimant will be harmed in its business or property in an amount to be proven at arbitration."

ATTM contends that the Clayton Act claim brought in the demand for arbitration exceeds the scope of the Arbitration Agreement.  The essence of the argument is that the arbitration demand is a "representative proceeding" and seeks injunctive relief well beyond the limitation in the agreement, namely "injunctive relief only in favor of the individual party seeking relief and only to the extent necessary to provide relief

6

warranted by that party's individual claim." Ms. Fisher disagrees. She argues that she is only seeking relief as an individual, and, moreover, the question of whether the relief sought exceeds that permitted by the agreement (as opposed to whether the claim is within the scope of the agreement) is a question for the arbitrator.[4]

Four other courts have already addressed the arguments raised here in written opinions and all have found that the dispute contained in the arbitration demand does not fall within

---

[4] In this last regard, Ms. Fisher's argument turns around on itself. She asserts that a Clayton Act claim falls within the broad scope of the Arbitration Agreement and thus ATTM must be compelled to arbitrate; that the question of whether the relief she requests runs afoul of the individual relief limitation in the Arbitration Agreement is for the arbitrator; and that if it is found that the limitation on relief in the Arbitration Agreement improperly interferes with her statutory rights under the Clayton Act, then the limitation on relief is unenforceable. The problem with this argument is that the Arbitration Agreement states that if the limitation on relief provision is unenforceable, then the entire agreement to arbitrate is unenforceable. As noted before, the Arbitration Agreement reserves the question of enforceability for the court. Thus, this court must determine whether the dispute is within the scope of the Arbitration Agreement and whether the agreement is enforceable by looking at the entirety of the agreement, and not just the small portion delineating the summary of the Arbitration Agreement. *See, e.g., Kristian v. Comcast Corp.*, 446 F.3d 25, 45-46 (1st Cir. 2006) (where conflict between statutory right and arbitration agreement is clear, question of whether a waiver is enforceable is for the court, rather than the arbitrator). Moreover, the question of whether an agreement encompasses class-based arbitration is generally not considered merely procedural. *Cent. W. Va. Energy, Inc. v. Bayer Cropscience LP*, 645 F.3d 267, 274-75 (4th Cir. 2011) (discussing *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 130 S.Ct. 1758 (2010)).

7

the scope of the agreement.[5] Three of those courts issued preliminary injunctions, while one found that course unnecessary. No court has yet agreed with Ms. Fisher's position.

### A.  Likelihood of Success

Parties to an arbitration agreement cannot be required to arbitrate a matter that they have not agreed to arbitrate. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002). In making the determination whether a particular dispute is within the scope of an agreement, a court is to "give effect to the contractual rights and expectations of the parties." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 130 S.Ct. 1758, 1774 (2010) (quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989)). Thus, a court employs the traditional tools of contract interpretation, including the principle that the entire document must be construed as a whole. *See Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 63 (1995).

---

[5] Memorandum and Order Granting Preliminary Injunction, *AT&T Mobility LLC v. Bernardi*, Nos. 11-03992, 11-04412 (N.D.Cal. Oct. 26, 2011) (Breyer, J.) (granted a preliminary injunction); Order, *AT&T Mobility LLC v. Smith*, No. 11-5157 (E.D.Pa. Oct. 7, 2011) (Davis, J.) (granted a preliminary injunction); *AT&T Mobility LLC v. Gonnello*, No. 11-5636, 2011 WL 4716617 (S.D.N.Y. Oct. 7, 2011) (Castel, J.) (denying the motion to compel arbitration); Order Granting Motion for Preliminary Injunction, *AT&T Mobility LLC v. Bushman*, No. 11-80922 (S.D.Fla. Sept. 23, 2011) (Ryskamp, J.) (granting a preliminary injunction).

Here, the Arbitration Agreement contains a number of provisions indicating an intent to limit arbitration to those disputes between the parties as individuals, and not as representatives of the interests of others. For instance, the summary states: "Any arbitration under this Agreement will take place on an individual basis; class arbitrations and class actions are not permitted." Later, the agreement provides that "[t]he arbitrator may award declaratory or injunctive relief only in favor of the individual party seeking relief and only to the extent necessary to provide relief warranted by that party's individual claim. YOU AND AT&T AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER ONLY IN YOUR OR ITS INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING."

Plaintiff's claim under the antitrust laws necessarily presents a representative claim because the limited private right of action is designed to augment enforcement of the public interest in competition:

> We are left, then, with the core of the *American Safety* doctrine-the fundamental importance to American democratic capitalism of the regime of the antitrust laws. *See, e.g.*, *United States v. Topco Associates, Inc.*, 405 U.S. 596, 610, 92 S.Ct. 1126, 1134, 31 L.Ed.2d 515 (1972); *Northern Pacific R. Co. v. United States*, 356 U.S. 1, 4, 78 S.Ct. 514, 517, 2 L.Ed.2d 545 (1958). Without doubt, the private cause of action plays a central role in enforcing this

9

> regime. *See, e.g.*, *Hawaii v. Standard Oil Co.*, 405 U.S. 251, 262, 92 S.Ct. 885, 891, 31 L.Ed.2d 184 (1972). As the [United States] Court of Appeals [for the First Circuit] pointed out:
>
>> "'A claim under the antitrust laws is not merely a private matter. The Sherman Act is designed to promote the national interest in a competitive economy; thus, the plaintiff asserting his rights under the Act has been likened to a private attorney-general who protects the public's interest.'" 723 F.2d [155,] 168 (quoting *American Safety* [*Equip. Corp. v. J. P. Maguire & Co.*], 391 F.2d [821,] 826 [(2$^d$ Cir. 1968)]).

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 634-35 (1985). In order to state a Clayton Act claim under § 16, a plaintiff must allege a cognizable threatened injury.

> Section 16 of the Clayton Act provides in part that "[a]ny person, firm, corporation, or association shall be entitled to sue for and have injunctive relief . . . against threatened loss or damage by a violation of the antitrust laws . . . ." 15 U.S.C. § 26. It is plain that § 16 and § 4 do differ in various ways. For example, § 4 requires a plaintiff to show actual injury, but § 16 requires a showing only of "threatened" loss or damage; similarly, § 4 requires a showing of injury to "business or property," *cf. Hawaii v. Standard Oil Co.*, 405 U.S. 251, 92 S.Ct. 885, 31 L.Ed.2d 184 (1972), while § 16 contains no such limitation. Although these differences do affect the nature of the injury cognizable under each section, the lower courts, including the courts below, have found that under both § 16 and § 4 the plaintiff must still allege an injury of the type the antitrust laws were designed to prevent. We agree.

*Cargill, Inc. v. Monfort of Colo., Inc.*, 479 U.S. 104, 110-111 (1986) (footnotes omitted). Thus, a proper Clayton Act claim must assert the interests of the public in fostering competition. The courts that have already enjoined identical arbitrations have similarly concluded that, despite the absence of a label as "representative" or "class action" based, the claim is not simply "individual." For example, Judge Davis concluded that the customer's "arbitration bears all the hallmarks of 'class arbitration' laid out in [*AT&T Mobility LLC v.*] *Concepcion*[, 131 S.Ct. 1740 (2011)]." Order at 12, *AT&T Mobility LLC v. Smith*, No. 11-5157 (E.D.Pa. Oct. 7, 2011). Those courts correctly identified the basic nature of the proceeding as representative.

ATTM, however, actually takes its argument a further step and claims that, not only did the parties not agree to arbitrate this dispute, but the customers also waived any right to bring this type of action anywhere, including in court. The waiver of the right to seek broad injunctive relief, it contends, is permissible because the Department of Justice and the Federal Trade Commission can pursue those remedies.[6] And, it contends in any event that, if the limitation on arbitration provision in subsection 2.2(6) is found to be invalid, then the entire

---

[6] The Arbitration Agreement does acknowledge that the customer could bring issues to the attention of government agencies that could seek relief on behalf of the customers.

11

agreement becomes inoperative and there is no requirement of any arbitration (and instead Ms. Fisher could file this broad Clayton Act claim in court). ATTM argues that this waiver of a cause of action is permissible, citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 32 (1991). In *Gilmer*, the Court rejected the argument that the arbitration agreement should not be enforced because of the potential that certain class based relief might not be available, noting that the EEOC could seek such relief. Ms. Fisher responds by referring to *Mitsubishi Motors Corp.,* 473 U.S. at 637 n.19, for the proposition that any such limitation on remedy renders the arbitration provision unconscionable and thus unenforceable.

While it is not necessary at this time to decide whether ATTM is correct in its assertion of the waiver of remedies available under the Clayton Act and, if so, whether the limitation on relief contained in the agreement renders the agreement unenforceable, it bears noting that the position espoused by ATTM misses a significant distinction between an agreement that waives some procedural mechanism, such as a jury trial or class action, and a waiver of a right otherwise available under a statute. If, by purportedly waiving the right to participate in a class or representative action, a litigant waives the right to a particular remedy under the antitrust acts

12

(or even to bring an antitrust action at all), the clause might violate public policy and be unenforceable.

> We merely note that in the event the choice-of-forum and choice-of-law clauses operated in tandem as a prospective waiver of a party's right to pursue statutory remedies for antitrust violations, we would have little hesitation in condemning the agreement as against public policy. *See, e.g.*, *Redel's Inc. v. General Electric Co.*, 498 F.2d 95, 98-99 (5th Cir. 1974); *Gaines v. Carrollton Tobacco Board of Trade, Inc.*, 386 F.2d 757, 759 (6th Cir. 1967); *Fox Midwest Theatres v. Means*, 221 F.2d 173, 180 (8th Cir. 1955); *cf. Lawlor v. National Screen Service Corp.*, 349 U.S. 322, 329, 75 S.Ct. 865, 869, 99 L.Ed. 1122 (1955). *See generally* 15 [Samuel] Williston, Contracts § 1750A (3d ed. 1972).

*Mitsubishi Motors Corp.*, 473 U.S. at 637 n.19. Further, as discussed by the Fourth Circuit in *In re Cotton Yarn Antitrust Litigation*:

> "By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." *Mitsubishi*, 473 U.S. at 628, 105 S.Ct. 3346. Thus, we must consider whether the contractual limitations period is inconsistent with any substantive rights conferred under the antitrust laws. If it is, then the contractual limitations period would not be enforceable. *See, e.g.*, *Kristian v. Comcast Corp.*, 446 F.3d 25, 48 (1st Cir. 2006) (in case involving arbitration of antitrust claims, concluding that arbitration agreement's ban on treble damages was unenforceable, because right to recover treble damages is a substantive right); [*Booker v.*] *Robert Half Int'l*[*, Inc.*], 413

13

> F.3d [77,] 83 [(D.C. Cir. 2005)] (concluding that arbitration agreement's ban on punitive damages was not enforceable because civil rights statute under which the plaintiff was proceeding provided for punitive damages); *Hadnot v. Bay, Ltd.*, 344 F.3d 474, 478 & n.14 (5th Cir. 2003) (concluding that arbitration agreement's ban on punitive damages was not enforceable as to the plaintiff's Title VII claim); *Morrison* [*v. Circuit City Stores, Inc.*], 317 F.3d [646,] 673 [(6th Cir. 2003)] (concluding that arbitration agreement's restriction on the damages recoverable was not enforceable because it was inconsistent with the damages authorized by Title VII).

*In re Cotton Yarn Antitrust Litig.*, 505 F.3d 274, 288-89 (4th Cir. 2007). Thus,

> [w]hile statutory claims are arbitrable unless Congress has specifically provided otherwise, agreements to arbitrate statutory claims may nonetheless be unenforceable if the terms of the agreement prevent the plaintiff from effectively vindicating his statutory rights. *See Green Tree* [*Fin. Corp.-Ala. v. Randolph*], 531 U.S. 79, 90, 121 S.Ct. 513 [(2000)]; *Mitsubishi*, 473 U.S. at 636-37, 105 S.Ct. 3346.
>
>     \* \* \* \*
>
> We have explained that the "crucial inquiry" when considering a claim that an arbitration agreement prevents a plaintiff from vindicating his statutory rights "is whether the particular claimant has an adequate and accessible substitute forum in which to resolve his statutory rights." *Bradford* [*v. Rockwell Semiconductor Sys., Inc.*], 238 F.3d [549,] 556 [(4th Cir. 2001)].

*Id.* at 289-90.

14

In *AT&T Mobility LLC v. Concepcion*, 131 S.Ct. 1740 (2011), the Court held that the FAA preempts a state court rule conditioning the enforceability of an arbitration agreement on the availability of classwide arbitration procedures. It did not squarely hold that such waivers can never violate public policy or, conversely, that they are always valid. Rather,

> [i]n *Concepcion*, the Supreme Court reviewed the Ninth Circuit's decision in *Laster v. AT&T Mobility LLC*, 584 F.3d 849 (9th Cir. 2009), *cert. granted sub. nom*, *AT&T Mobility LLC v. Concepcion*, --- U.S. ----, 130 S.Ct. 3322, 176 L.Ed.2d 1218 (May 24, 2010), which had held that a class action waiver provision in an arbitration agreement was unenforceable under the test for unconscionability set forth in *Discover Bank [v. Superior Court*, 113 P.3d 1100 (Cal. 2005)]. The Supreme Court reversed *Laster*, and held that the *Discover Bank* rule was preempted because "[r]equiring the availability of classwide arbitration interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA." *Concepcion*, 131 S.Ct. at 1748. In so finding, however, the Court specifically noted that the FAA "permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' [although] not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *Id.* at 1746 (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 685, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996)).

*Lewis v. UBS Fin. Servs. Inc.*, No. C 10-04867 SBA, 2011 WL 4727795, at *5 (N.D.Cal. Sept. 30, 2011). The Eleventh Circuit

15

has concluded that *Concepcion* means that arbitration agreements with class action waivers must be analyzed under the particular circumstances of each case and may not categorically be considered either unenforceable or acceptable. *Cruz v. Cingular Wireless, LLC*, 648 F.3d 1205, 1214-15 (11th Cir. 2011).

It is enough for today to conclude that ATTM has made a substantial showing that it likely will succeed on the proposition that Ms. Fisher's arbitration demand falls outside the scope of the agreement to arbitrate.

### B. Irreparable Harm and Balance of Equities/Hardships

Ms. Fisher concedes that being forced to arbitrate a claim one has not agreed to arbitrate constitutes irreparable harm. (*See* ECF No. 46, motions hearing transcript, at 21). She contends, however, that it is equally true that being prohibited from arbitrating a claim one has agreed to arbitrate is similarly irreparable. She concludes, then, that the balance of hardship is in equipoise.

ATTM seeks, at this time, a preliminary injunction, and is not pressing for a permanent injunction. Thus, a temporary delay in arbitration is the only harm potentially being inflicted on Ms. Fisher. On the other hand, if the arbitration goes forward, ATTM will forever lose its right not to arbitrate this claim. Moreover, with the other proceedings that are ongoing at this time, devoting any more resources to the

16

arbitrations harms ATTM in its ability to participate in the larger proceedings.

### C. Public Interest

The public interest weighs in favor of issuing a preliminary injunction. The ongoing proceedings are the preferable forum for exploring the interests of all affected parties.

### IV. Conclusion

For the foregoing reasons, the motion for a preliminary injunction will be granted. On the other hand, Ms. Fisher has not established either that there is a fully enforceable agreement to arbitrate or that this dispute falls within its scope, and her motion to compel arbitration will be denied. A separate order will be entered.

```
                              /s/
                    _____
                    DEBORAH K. CHASANOW
                    United States District Judge
```